UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RACHEL GUIMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:10-cv-00037-JAW |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| | ) |
| Defendant | ) |

## AMENDED[1] RECOMMENDED DECISION

The Social Security Administration found that Rachel Guimond, 19 years old as of the date of alleged onset of disability in 2001, but 25 as of the date she filed her claims, was disabled for purposes of substantial gainful activity, due to polysubstance abuse, but would not have been disabled in the absence of substance abuse despite the presence of bipolar disorder, borderline personality disorder, post-traumatic stress disorder, and panic disorder. Because the Commissioner found that Guimond would not have a disabling combination of impairments in the absence of substance abuse, he denied Guimond's application for Title II and Title XVI disability benefits. Guimond commenced this civil action for judicial review of the final administrative decision. I recommend that the Court remand for further administrative proceedings because of error related to the social limitations imposed by Guimond's underlying psychiatric conditions.

### STANDARD OF REVIEW

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health &

---

[1] The only change in this Amendment is on Page 9, Section G where the year 3009 is changed to the correct year 2009.

Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable person might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the November 30, 2009, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge Joseph Shortill. (Doc. No. 8-2 at 2.) The Commissioner rests, in effect, on the October 26, 2009, decision issued by Judge Shortill. (Id. at 9-22.) Judge Shortill's decision tracks the familiar five-step sequential evaluation process for social security disability claims.

At step 1 of the sequential evaluation process, the Judge found that Guimond meets the insured status requirements of Title II through September 30, 2003, and has not engaged in substantial gainful activity since August 1, 2001, the date of alleged onset of disability. (Findings 1 & 2.)

At step 2, the Judge found that Guimond has severe mental impairments consisting of bipolar disorder, panic disorder, post-traumatic stress disorder, borderline personality disorder, and polysubstance abuse. (Finding 3.) The Judge found that, while abusing substances, Guimond has moderate difficulties in the three mental function categories (activities of daily living, social functioning, and concentration, persistence, and pace).

At step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments, particularly mental listings 12.04,

12.06, and 12.08, because, "in the absence of substance abuse," the evidence fails to demonstrate marked limitation in at least two of the "paragraph B criteria." (Finding 5.) Guimond does not press a contrary argument here.

At step 4, the Judge found that the medical evidence and other evidence of record reasonably demonstrates that Guimond's combined impairments, including substance abuse, restrict her to simple, low-stress, unskilled work requiring only occasional adjustment to routine or interaction with the public and coworkers. In addition, the Judge determined that Guimond's substance abuse would result in absences from work two to three times per month. (Finding 6.) In the absence of substance abuse, the Judge found that Guimond could perform simple, low-stress, unskilled work at all exertional levels, subject to the same social and adaptation restrictions, but would only be absent from work once every couple of months for a total of five or six times per year. (Finding 7.) The Judge found both scenarios preclude past relevant work as a charge account clerk, sales clerk, home attendant, or customer service ticket agent due to the level of detail involved and more than occasional interaction with the public. (Finding 8.)

At step 5, given Guimond's occupational profile, including an eighth grade education level, and the combined limitations imposed by all of her mental impairments, including substance abuse, the Judge found that a finding of disabled would be appropriate under the framework of Section 204.00 of the Medical-Vocational Guidelines. (Finding 12.) However, he also found that, in the absence of the effects of substance abuse, there would be a significant number of jobs in the national economy that Guimond could perform, based on testimony supplied by a vocational expert in response to questions concerning Guimond's vocational profile and residual functional capacity. (Finding 13.) The representative jobs offered by the vocational expert and accepted by the Judge are bottling line attendant, kitchen helper/dishwasher,

cleaner/housekeeper, and assembler.² (Id.) Because these findings would mean that substance abuse is a material contributing factor to the disability determination, the Judge denied Guimond's claims. (Finding 14.)

### THE RECORDS

The record contains over a thousand pages of medical records, predominantly mental health treatment records. (Doc. Nos. 8-7 through 8-20.) For the most part, the treatment records are dated between 2002 and 2009, though there are records from as early as 1998, when Guimond was a minor. The Commissioner's consulting medical experts reviewed Guimond's records in May of 2007, while Guimond was in the throes of an acute episode of substance abuse and was experiencing other acute stressors in her life, and again in April of 2008, when substance abuse was in "guarded" remission and the treatment effort was focused more on managing and medicating her underlying psychological conditions. What follows is a snapshot of the medical record beginning with the assessment of Dr. Brenda Sawyer, the first expert to offer an opinion on Guimond's residual functional capacity.

**A.     Dr. Sawyer's May 31, 2007, PRT and Mental RFC Assessment**

On May 31, 2007, Brenda Sawyer, Ph.D., performed a psychiatric review technique and mental health residual functional capacity assessment for Disability Determination Services. (Doc. No. 8-14.) Dr. Sawyer identified an affective disorder, bipolar II, as Guimond's medically-supported impairment. (R. 1088, 1100.) She did not identify a substance addiction disorder on the PRT form, but, theoretically, she explained this by indicating that Guimond's allegations of disability were limited to bipolar disorder, anxiety, and post-traumatic stress disorder. (R. 1088,

---

² In fact, the vocational expert's testimony was to the effect that the bottling line attendant and assembler occupations likely would not serve, due to common 90-day trial work periods in which the employer will not tolerate any absences. (R. 80-85.)

1096.) Dr. Sawyer's notes address substance abuse as follows:

> There was a 7-month period where she was frequently hospitalized for suicidal threats while she was abusing opiates. Then things settled down while she pursued treatment for chemical dependence.
>
> Since being on replacement therapy for her opioid dependence, her moods have been more stable. See RFC.

(R. 1100.) Evaluating the "B Criteria" of the Commissioner's Listings of Impairments, on the PRT form, Dr. Sawyer opined that Guimond has only a mild degree of limitation in activities of daily living and maintaining social functioning, but a moderate degree of limitation in maintaining concentration, persistence, or pace. She also identified "one or two" episodes of decompensation in the medical records. (R. 1098.)

On the mental RFC form, Dr. Sawyer made summary conclusions that would effectively rule out work involving detailed instructions. (R. 1102, ¶ I.B.3.) Dr. Sawyer also made summary conclusions of a moderate degree of limitation in the ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychological conditions and to perform at a consistent pace without an unreasonable number or length of rest periods; and to respond appropriately to changes in the work setting. (R. 1102-03, ¶¶ I.B.6, I.B.11, I.D. 17.) In her narrative functional capacity assessment, Dr. Sawyer observed that Guimond "has had multiple admissions for out of control behavior, usually under the influence. Current working diagnosis is Bipolar Disorder. Her moods and behavior have improved since discontinuing illicit drug use." (R. 1104.) As for the level of instruction and task complexity that Guimond could handle, Dr. Sawyer indicated that Guimond could understand and remember non-complex tasks and could attend to and persist at simple tasks, but has a mood disorder that precludes more complex tasks. Dr. Sawyer otherwise opined that Guimond has no social limitation at all, and that she requires a routine with few day-

5

to-day changes.  (Id.)

B.     2007-2008 Progress Notes and Treatment Records

The record reflects a relatively stable period in 2007, with Guimond focused on efforts to regain custody of her daughter.  (Doc. No. 8-15, R. 1107.)  Guimond was persisting with treatment for opioid dependency (methadone maintenance followed by Suboxone therapy) and mood medication management, with some setbacks and resistance to the discontinuance of Klonopin (an addictive benzodiazepine).  She was also semi-regularly counseling with Sue Romero, LSW, of the Wabanaki Mental Health Association.  She was also enrolled in occupational therapy, but was discharged due to lack of consistent attendance.  (Doc. No. 8-15, Exs. 26F, 27F, 28F, Doc. No. 8-16, Exs. 29F, 30F, Doc. No. 8-18, Ex. 40F.)  Outpatient substance abuse therapy recommenced March 13, 2008.  (R. 1332.)  On March 20, 2008, Acadia admitted Guimond after she took six Elavil to go to sleep and also to monitor her transition to a higher dosage of Depakote, medication prescribed to treat her bipolar disorder, and for a family counseling session.  (Ex. 31F, R. 1354-66.)

C.     April 3, 2008, Treatment Provider Assessment

On April 3, 2008, Shaun O'Connor, PA-C, of Old Town Family Practice, wrote a letter identifying "multiple severe problems over the past several years including bipolar affective disorder, alcohol dependence, hypothyroidism, polysubstance abuse including opioid addiction and treatment, obesity secondary to medication, ADHD, and most recently, a tricyclic antidepressant overdose in March 2008."  (Doc. No. 8-16, R. 1383.)  According to PA O'Connor, he had a guarded prognosis for future employment and explained that Guimond had been "unable to find gainful employment because of her labile mood, addictions, and cycling of her bipolar disorder."  (Id.)

6

**D.     Dr. Waranch's April 6, 2008, Case Analysis and Medical Source Statement**

R. Waranch, Ph.D., reviewed Guimond's records in April of 2008. Among other issues he noted was an acknowledgement by Guimond that she had obtained an admission into Acadia Hospital in March of 2006 by faking a suicide attempt to get out of Penobscot County Jail. (Doc. No. 8-16, Ex. 33F, R. 1384.) According to Dr. Waranch, "at times, when not abusing substances, MSE appears WNL." (Id.) This shorthand reflects that Dr. Waranch regarded Guimond's mental status to be within normal limits when she is not actively abusing substances. However, when abusing, his assessment was that her impairment level "meets listing level severity for 12.09 with 12.04 and 12.08," referencing the Commissioner's Listing of Impairments for substance addiction disorders, affective disorders, and personality disorders, respectively. On the other hand, Dr. Waranch found: "If not abusing substances, she would have a severe mental impairment due to Borderline Personality Disorder that does not meet or equal listing level severity." Alluding to the Commissioner's psychiatric review technique form, he offered the following shorthand assessment: "PRTF Criteria: (1) none, (2-3) moderate and (4) none." The logical interpretation is that this is a reference to Part III of the PRT form, which involves four questions related to degree of limitation. (See, e.g., Dr. Sawyer's PRT form, Doc. No. 8-14, R. 1098.) In effect, in his case analysis report, Dr. Waranch assessed a moderate degree of limitation in the areas of maintaining social functioning and maintaining concentration, persistence, and pace. As for residual functional capacity, Dr. Waranch opined: "Her impairment is consistent with the ability to complete SRT [simple repetitive tasks] in a work environment." (Doc. No. 8-16, R. 1385.) However, in his separate medical source statement (Ex. 34F), Dr. Waranch identified moderate limitations in four areas of social interaction (including interaction with supervisors) and mild limitation in relation to maintaining attention

7

and concentration, even in the absence of substance abuse. (Doc. No. 8-16, R. 1387.)

**E.     May 6, 2009, Medical Source Statement**

Sharon Piper, PMH-NP, and Dr. Rusk, MD, submitted a medical source statement dated May 6, 2009. Their responses on the Commissioner's form reflect that there are several areas in which they assessed marked limitation[3]: six areas of concentration, persistence, and pace; two areas of social interaction (including interacting with supervisors); and one area of adaptation. (Doc. No. 8-20, Ex. 45F, R. 1665-66.) The statement relates that treatment was provided for bipolar disorder, ADHD, opioid dependence (counseling), and borderline personality. (R. 1666.) The providers included the following note: "Pt clearly has difficulties interacting with peers + supervisors, but in going through these questions she would state 'I could if I wanted to . . .' in response to questions # 8 + 10. She also said she would not ever use public transportation." (Id.) Questions 8 and 10 relate to "ordinary routine" and "simple work-related decisions."

**F.     June 23, 2009, Medical Source Statement**

Dr. Christopher Ritter, MD, FP, submitted a medical source statement dated June 23, 2009. He also identified several areas of marked limitation in the areas of concentration, persistence, and pace, social interaction, and adaptation, though his check boxes do not line up precisely with those of NP Piper and Dr. Rusk. (Doc. No. 8-20, Ex. 46F, R. 1667-68.) Among other marked limitations, Dr. Ritter indicated that Guimond would not be able to accept instruction and respond appropriately to criticism from supervisors. Dr. Ritter's notes indicate:

ADHD—difficulties of concentration and execution likely meds not effective

Social anxiety—lifelong—previously self-treated with drugs

Bipolar—longstanding responding somewhat to mood stabilizers

---

[3]     The Commissioner's Medical Source Statement form instructs practitioners to mark off the areas of functioning that are "markedly limited or effectively precluded." (R. 1665.) It does not offer check boxes for moderate limitation.

(R. 1668.) Dr. Rusk did not indicate that his assessment of functioning depended on the existence of substance abuse.

## G.     June 23, 2009, Treatment Record

The final chart in the record is a treatment note dated June 23, 2009, which identifies Bipolar Disorder, ADHD, and social anxiety as Guimond's residual impairments. (Doc. No. 8-20, Ex. 47F, R. 1689-70.)

### DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

The allegations of error concern steps 4 and 5 of the sequential evaluation process. At step 4 of the process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with her past relevant work, the claimant is found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). As a component of proving that her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). At step 5 of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden shift is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of other work the claimant could do. Ordinarily, the Commissioner

9

will address the step 5 burden "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Id.

Guimond presses a collection of arguments in her statement of errors. I find that the state of the record concerning Guimond's ability to interact appropriately with supervisors undermines the reliability of the vocational expert testimony supplied in this case. Although it is certainly questionable whether Guimond was disabled from all substantial gainful activity as of the date of her hearing, my lay assumptions about her then-existing functional capacity and optimism about her potential cannot substitute for expert opinion about the social and occupational impacts of her mental health impairments. Nor can the lay assumption of the Administrative Law Judge.

Guimond primarily complains that the Judge drew from the opinions of both of the Commissioner's medical consultants (Dr. Sawyer and Dr. Waranch), but failed to account for discrepancies in their opinions and selected certain limitations, but not others, in a way that defies easy reconciliation. (Statement of Errors at 5-8.) In particular, Guimond observes that Dr. Sawyer did not identify substance abuse disorder as an independent diagnosis in her PRT, whereas Dr. Waranch identified it as an impairment existing at Listing-level severity. (Id. at 5-6.) Additionally, Guimond faults the Judge for relying on some, but not all, of Dr. Waranch's opinions concerning social limitations, without providing an explanation why difficulty with interacting appropriately with supervisors was omitted from his findings.[4] (Id. at 7-8.)

---

[4] There is an additional assertion of error related to the Judge's failure to word his residual functional capacity finding in terms of a limitation to "simple" work. (Id. at 8-9.) However, the Judge worded his residual

10

The differences in Dr. Sawyer's and Dr. Waranch's opinions regarding substance abuse are not easily reconciled. In particular, it is difficult to understand why Dr. Sawyer did not recognize the existence of a long-term substance abuse disorder. In any event, Guimond is correct that there is an insufficient basis in the record to explain the Judge's dismissal of Dr. Waranch's prediction of a social limitation related to interacting with supervisors. Because this error undermines the Judge's residual functional capacity finding, it calls for remand.

All of the medical expert opinions on functional capacity recognize that Guimond's impairments impose social limitations, except for the opinion of Dr. Sawyer. Although the Judge says he found the opinion of the Disability Determination Services consultant[5] to be "well supported and consistent with the record as a whole," and gave it "considerable weight" (R. 18), in fact he disregarded Dr. Sawyer's rejection of Guimond's allegations about severe anxiety disorder and PTSD. Unlike Dr. Sawyer, the Judge found that Guimond's severe impairments include a panic disorder and PTSD.[6] The Judge also rejected Dr. Sawyer's assessment that there would be no social limitation at all. The Judge found that there would be social limitations regarding both co-workers and the public, even in the absence of substance abuse, which makes his finding more consistent with that of Dr. Waranch than with the opinion of Dr. Sawyer.[7] Yet,

---

functional capacity finding to limit Guimond to non-complex, unskilled work with a reasoning level of one or two. (R. 13.) There is no harm in this wording because "simple" work corresponds with work that has a reasoning level of one or two in the Dictionary of Occupational Titles. Little v. SSA Comm'r, No. 1:10-cv-96-JAW, 2010 U.S. Dist. Lexis 136295, *4-8, 2010 WL 5367015, *3 (D. Me. Dec. 21, 2010) (Kravchuk, Mag. J., Rec. Dec.) (affirmed in the absence of objection); Pepin v. Astrue, No. 2:09-cv-464-GZS, 2010 U.S. Dist. Lexis 98294, 2010 WL 3361841 (D. Me. Aug. 24, 2010) (Rich, Mag. J., Rec. Dec.) (same).

5     The Judge did not refer to Dr. Sawyer by name.

6     The Judge also found borderline personality disorder to be among Guimond's severe impairments, though this impairment was not considered by Dr. Sawyer.

7     Dr. Sawyer's assessment is also notably different from the Judge's because Dr. Sawyer did not indicate the presence of a substance abuse disorder, whereas the presence of this disorder was central to the Judge's discussion of Guimond's claims. Although Dr. Sawyer indicated that Guimond's claims did not include substance abuse disorder as an alleged impairment, Dr. Sawyer's characterization of that impairment as confined to a seven-month window is

Dr. Waranch (like the treatment providers) also found a moderate limitation in regard to interaction with supervisors and the Judge did not. On this peculiar distinction, the Judge's decision fails to offer any explanation. For example, there is no discussion of the social function category at all or any explanation why Dr. Sawyer's assessment would be rejected on so many grounds and yet be described as worthy of considerable weight in this one subcategory of social functioning. Dr. Sawyer's RFC opinion is simply too dissimilar to the Judge's findings to provide a backstop on this one area of social functioning. As Guimond argues, ability to interact appropriately with supervisors is a significant occupational demand of unskilled labor, see SSR 85-15, 1985 WL 56857, *5-6, 1985 SSR Lexis 20, *14-16, and the potential impact of a moderate limitation in this area cannot be resolved by an exercise of lay judgment. Because the Judge's decision to drop the supervisor-social limitation found by Dr. Waranch and the treatment providers depends on an unexplained exercise of lay judgment, it lacks a substantial evidentiary basis.

"The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by . . . judging matters entrusted to experts." Nguyen, 172 F.3d at 35.[8] Because this error carried over to the hypothetical questions presented to the

---

not borne out by the record. Rather, it would be fair to say that the seven-month period Dr. Sawyer emphasized was a period preceding Dr. Sawyer's review in which Guimond was acutely suffering the consequences of a self-abusive and irresponsible lifestyle that, when added to other factors in her life, including a period of incarceration and voluntary discontinuance of prescription medication, destabilized both her affective disorder and her family support system and also had a seriously negative impact on her ability to maintain custody of her minor daughter. (See, e.g., ECF PageID ## 579-80, 585-88, 622-641.) Although this certainly amounted to a spike on the chart, the evidence demonstrates a long-term condition. Fortunately, it appears that Guimond has rebounded appreciably since this period of unraveling. At her August 3, 2009, hearing, Guimond reported being sober and off methadone for eight months and that she had not used alcohol for two years. (ECF PageID # 70.) Nevertheless, there are severe underlying psychiatric conditions that impose certain occupational challenges. Hopefully, this young woman's continued recovery and development will lead to greater occupational aspirations than what is demonstrated by this record.

[8] Guimond also argues that the Judge was required to incorporate in his residual functional capacity finding some limitation arising from the fact that he found one or two episodes of decompensation in the record. However, Guimond acknowledges that the Commissioner's regulations and rulings do not require any one-to-one

vocational expert, the vocational expert's testimony does not serve as substantial evidence in support of the Commissioner's step 5 finding. Arocho, 670 F.2d at 375.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court VACATE and REMAND the Administrative Law Judge's decision for further proceedings consistent with the foregoing discussion.

NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.
>
> Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 27, 2011

---

correspondence between past episodes of decompensation and any specific residual functional capacity finding. (Statement of Errors at 10-13.) I am not persuaded that the record dictates what impact Guimond's past episodes would have on her ability to maintain employment. Moreover, there is a relationship in this record between decompensation and substance abuse. The abuse of drugs or alcohol cannot pave the way to disability payments as a matter of law. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. There is also a basis in the record to find that a failure to take prescribed medications played some role in causing decompensation. This is another avenue that does not ordinarily lead to disability payments. 20 C.F.R. § 404.1530, 416.1530.

13